IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| David Caudill, | : | |
| | : | Case No. 1:19-cv-963 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Judgment on the |
| The Hartford Life and Accident | : | Administrative Record for the Plaintiff |
| Insurance Company, | : | |
| | : | |
| Defendant. | : | |

**I.  Introduction**

This matter is before the Court on Cross-motions for Judgment on the Administrative Record.  (Docs. 26, 29.)  Plaintiff David Caudill had been receiving long-term disability benefits from Defendant The Hartford Life and Accident Insurance Company.   However, in January 2019, The Hartford terminated his benefits, finding that he was no longer too disabled to work.  Caudill appealed, claiming that his fibromyalgia and chronic obstructive pulmonary disorder ("COPD") leave him unable to work, and The Hartford denied his appeal in September 2019.  In denying the appeal, The Hartford relied almost exclusively on an independent file review by Dr. Jared Schulman.  Caudill was not given the Dr. Schulman report before his appeal was denied, nor was he permitted to respond to it.  Caudill argues that the applicable Department of Labor ("DOL") regulations required that he be given a copy of this report prior to the denial of his appeal.  The Hartford denies that the applicable regulations required it to give Caudill a copy of the report. Caudill also argues that The Hartford acted in an arbitrary and capricious manner in denying his appeal.  The Hartford denies that it acted arbitrarily and capriciously.  For the reasons that follow, the Court finds that The Hartford acted arbitrarily and capriciously and

denied Caudill a full and fair review in terminating Caudill's benefits and will grant Caudill's Motion for Judgement on the Administrative Record.

## II. Standard of Review

The question of whether Caudill received a full and fair review as required by 29 U.S.C. § 1133 is a question of law, and so the Court does not defer to the plan administrator. *Rumpke v. Rumpke Container Service, Inc.*, 240 F.Supp.2d 768, 771–72 (S.D.Ohio 2002); *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F.Supp.3d 737, 747 (S.D.Ohio 2022).

ERISA requires that the district court perform a de novo review of a denial of benefits unless the benefit plan gives the plan administrator discretionary power "to interpret plan terms and apply those terms to a participant's circumstances." *Autran v. Procter and Gamble Health and Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022). The plan in this case contains the necessary delegation of discretionary power. (Doc. 24-1 PageID 249.) Therefore, an arbitrary and capricious standard applies.

## III. Analysis

### A. Full and Fair Review

#### 1. Introduction

29 U.S.C. § 1133 states that Caudill is entitled to a full and fair review of any termination of his benefits. The DOL has published extensive regulations detailing the procedures that must be followed to qualify as a full and fair review. *See* 29 C.F.R. § 2560.503-1. Relevant to this case is whether or not 29 C.F.R. § 2560.503-1(h) requires that Caudill be given a copy of Dr. Schulman's report prior to the denial of his appeal. Caudill argues that two provisions of the regulations, 29 C.F.R. § 2560.503-1(h)(2)(iii) and 29 C.F.R. § 2560.503-1(h)(4)(i), require that he be given a copy of Dr. Schulman's report. Different circuit courts have reached different

conclusions as to whether § 2560.503-1(h)(2)(iii) requires a fiduciary to give a claimant a copy of any new evidence generated on appeal, and the Sixth Circuit has not ruled on the question. However, the Sixth Circuit has made clear that if § 2560.503-1(h)(2)(iii) does require The Hartford to provide Caudill with a copy of Dr. Schulman's report, The Hartford need only do so upon request.

Effective January 18, 2017, the DOL amended 29 C.F.R. 2560.503-1 to include several new provisions, including § 2560.503-1(h)(4)(i). The plain language of § 2560.503-1(h)(4)(i) does clearly require The Hartford to provide Caudill with a copy of Dr. Schulman's report, whether Caudill requests it or not. However, the parties disagree as to whether this section applies to Caudill's claim. The Federal Register entry amending the C.F.R. stated that the amendments are applicable only to claims filed on or after January 1, 2018. However, the applicability date clause that the rulemaking actually added to the C.F.R. is more limited, applying the January 1, 2018 applicability date to only some of the clauses added by that rulemaking.[1] As a result, the Court must determine whether § 2560.503-1(h)(4)(i) applies to Caudill's claim.

**2. Does §2560.503-1(h)(4)(i) Apply to Caudill's Claim?**

The parties disagree as to whether 29 C.F.R. § 2560.503-1(h)(4)(i) applies to Caudill's claim. If it does, then The Hartford was required to give Caudill a copy of the file review regardless of whether Caudill requested it. Subsection (h)(4)(i) was added to § 2560.503-1 by the DOL in December 2016. The Federal Register states that the amendment has an effective date of January 18, 2017. 81 Fed. Reg. 92316. Therefore, the amendment was in effect on the date of Caudill's appeal in 2019. However, some or all of the amendment applies only to claims

---

[1] A later rulemaking would delay this date to April 1, 2018.

filed on or after January 1, 2018. Caudill's claim was filed in 2011. Therefore, if subsection (h)(4)(i) is one of those sections of the amendment to which the 2018 applicability date applies, it would not apply to Caudill's claim.

Defendant argues that the 2018 applicability date applies to subsection (h)(4)(i) for two reasons. First, Defendant argues that the applicability date listed in the preamble of the Federal Register entry should be understood as applying to the whole of the amendments to the regulation. Second, Defendant argues that subsection (p)(4) of the amended regulation makes sense only if the applicability date applies to subsection (h)(4)(i). The Regulatory Impact Analysis in the Federal Register entry delaying the applicability date also supports Defendant's argument.

Plaintiff argues that the plain text of the regulation makes clear that the applicability date does not apply to subsection (h)(4)(i). Subsection (p)(1) of the regulation provides that the applicability date for all subsections of § 2560.503-1 is January 1, 2002, unless subsections (p)(2), (p)(3), or (p)(4) provide otherwise. Since none of those three subsections apply in this case, subsection (p)(1) must control, and so the applicability date for (h)(4)(i) must be January 1, 2002.

In the preamble of the Federal Register entry is the following text:

> Effective Date: This rule is effective January 18, 2017.
> Applicability Date: This regulation applies to all claims for disability benefits filed on or after January 1, 2018.

81 Fed. Reg. 92316. The applicability date would later be delayed to April 1, 2018. 82 Fed. Reg. 47409-01. Because Caudill's claim for benefits was filed in 2011, if this language applies to subsection (h)(4)(i), then (h)(4)(i) would not apply to Caudill's claim.

a. **The Applicability Date**

Defendant argues that, because the preamble of the rulemaking published in the Federal Register provides a 2018 applicability date, the amendments to the rule added by that rulemaking are not applicable to Caudill's claim. Several courts have applied the applicability date in the Federal Register to § (h)(4). *See, e.g. Mayer v. Ringler Assocs. Inc.,* 9 F.4th 78, 86 n. 4 (2nd Cir. 2021). However, these cases have not thoroughly discussed the issue.

The applicability date in the preamble of the Federal Register does not include any limitation as to which of the amendments it applies. However, the text of the regulation suggests that it does not apply to all of the amendments. Firstly, the regulations as amended contain an applicability date provision which does not include (h)(4)(i). 29 C.F.R. § 2560.503-1(p)(3). Secondly, 29 C.F.R. § 2560.503-1(p)(4), which was added by the same Federal Register entry, applies only to claims filed between January 18, 2017 and April 1, 2018. This suggests that, at a minimum, the applicability date does not apply to § 2560.503-1(p)(4).

### b. 29 C.F.R. § 2560.503-1(p)(1)

29 C.F.R. § 2560.503-1(p)(1) provides that 29 C.F.R. § 2560.503-1 applies to all claims filed on or after January 1, 2002, except as otherwise provided by § 2560.503-1(p)(2), (3), and (4). The parties agree that Caudill's claim does not fall into the categories listed in § 2560.503-1(p)(2), (3), and (4). Read in isolation, § 2560.503-1(p)(1) would require the Court to apply § 2560.503-1(h)(4)(i) to Caudill's claim.

### c. 29 C.F.R. § 2560.503-1(p)(4)

The DOL interprets the prior version of the regulations as requiring the fiduciary to provide a claimant with any new evidence upon request of the claimant. 81 Fed. Reg. at 92324 n. 16. However, several courts have interpreted the regulations differently than the DOL. *Id.* at n. 17. As a result, the DOL clarified the pre-2017 regulations through the amendment at issue. *Id.* The

5

DOL also intended to shift from a procedure where the claimant would have to request any new evidence to a system where new evidence must be provided automatically. Section 2560.503-1(p)(4) seems intended to transition from the old rule, where new evidence was available to a claimant only upon request, to the new rule, where it must be provided automatically. Section 2560.503-1(p)(4) applies only to claims filed between January 18, 2017, and April 1, 2018. It provides that any new evidence relied upon must be provided to the claimant upon request prior to the denial of his appeal, making explicit the DOL's interpretation of the prior version of the regulations. This suggests that the provision was meant to transition fiduciaries from the old rule, where documents were available only upon request, to the new rule, where they would have to be provide automatically. Defendant suggests that it would make little sense to have the rule apply to claims filed from January 1, 2002, to January 18, 2017 and from April 1, 2018 to the present while the old rule governed claims from January 18, 2017 to April 1, 2018. However, to the extent that the temporary provision was meant to give fiduciaries time to transition, it seems odd that the DOL would require the old rule to govern any claims reopened after the new rule took effect. As things stand presently, under Defendant's interpretation, fiduciaries must apply both the old and the new rule to pending appeals depending on when the initial claim was filed.

### d. 29 C.F.R. § 2560.503-1(p)(3)

The regulation as amended does contain a provision applying the April 1, 2018 applicability date to certain subsections of the regulation, but § 2560.503-1(h)(4)(i) is not listed. Because the items expressed (i.e. the subsections to which the April 1 applicability date applies) are members of an "associated group or series," it is appropriate for the Court to apply the canon *expressio unius est exclusio alterius*. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). The

absence of § 2560.503-1(h)(4)(i) in the list of subsections to which the April 1 applicability date applies suggests that the applicability date was not meant to apply to § 2560.503-1(h)(4)(i).

### e. Federal Register Preamble

After the effective date of the amendments at issue, but prior to the applicability date, the DOL decided to delay the applicability date of the amendments to allow for an additional regulatory impact analysis. The preamble in the Federal Register entry delaying the applicability date of the amendments to the regulation seems to indicate that the DOL understood, at least at that time, that the applicability date did apply to the provision at issue, since the preamble solicited comments about the cost of complying with § 2560.503-1(h)(4)(i). 82 Fed Reg. 47409-01, 43413. This suggests that the DOL thought, at least at the time of the applicability date delay, that the applicability date did apply to § 2560.503-1(h)(4)(i).

### f. Application of the 2018 Regulation

It may well be that the DOL intended that (h)(4)(i) would apply only to claims filed after April 1, 2018. However, that is not what the regulation actually says. "[I]f there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much [one might] insist[ ] it would make more sense." *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1080 (6th Cir. 2022) (quoting *Kisor v. Wilkie*, --- U.S. ---, 139 S. Ct. 2400, 2415 (2019)). Assuming the April 1 applicability date is understood as applying to § 2560.503-1(h)(4)(i),[2] it conflicts with the text of the C.F.R. The applicability date is a part of the

---

[2] It is not clear that the applicability date in the preamble is intended to apply to all clauses added by the rulemaking. While The Hartford argues that it would be absurd for the regulation to have one rule which applies only to claims filed between January 18, 2017 and April 1, 2018, while applying another rule before and after that period, it would be more absurd for the April 1, applicability date to apply to this clause, since, if it does, the clause would never take effect. The applicability date must not apply to all clauses added by that rulemaking. Because the April 1 applicability date does not apply to all clauses added by the rulemaking, the Court looks to the text of the regulation to determine to which clauses the applicability date applies. 29 C.F.R. § 2560.503-1(p)(3) lists certain clauses to

preamble of the rulemaking. *See* Office of the Federal Register, *Document Drafting Handbook* § 3.4 (August 2018 Ed. Revision 1.4 (January 7, 2022)); 1 C.F.R. § 18.12. In situations where there is a discrepancy between the Federal Register and the C.F.R., it is the C.F.R. which controls. *AT&T Corp. v. Fed. Commc'n Comm'n,* 970 F.3d 344, 351 (D.C. Cir. 2020). The applicability date in the preamble of the Federal Register does not apply to § 2560.503-1(h)(4)(i). The Hartford, therefore, was required to provide Caudill with a copy of Dr. Schulman's report prior to denying his appeal.

### 3. The 2002 Regulation

If, however, § 2560.503-1(h)(4)(i) does not apply to Caudill's claim, the Court must turn to an older section of the regulation, 29 C.F.R. § 2560.503-1(h)(2)(iii), which requires that a claimant "shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Caudill argues that, under this subsection of the regulation, Defendant was obligated to turn over Dr. Schulman's report to him upon request. The Court notes that there is at present a circuit split on this issue, and that the Sixth Circuit has not yet weighed in. *See Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18 (1st Cir. 2021); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011) (requiring disclosure of the reports). *But see Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78 (2nd Cir. 2021); *Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217 (3rd Cir. 2013); *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303 (5th Cir. 2015); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009); *Metzger v. UNUM Life Ins. Co.*, 476 F.3d 1161 (10th Cir. 2007); *Glazer v. Reliance Standard Life Ins. Co.*,

---

which the April 1, 2018 applicability date applies. The clause at issue in this case is not among them. Therefore, the applicability date likely does not apply to the disputed clause.

524 F.3d 1241 (11th Cir. 2008) (holding that claimant is not entitled to a report generated on appeal). While the Sixth Circuit has called the claim that the regulations require disclosure of a document upon request "dubious," this was before the First Circuit's well-reasoned opinion in *Jette*. *Balmert v. Reliance Standard Life Ins. Co.,* 601 F.3d 497, 502–03 (6th Cir. 2010). However, the Court need not reach this issue.

As *Balmert* makes clear, to the extent that § 2560.503-1(h)(2)(iii) requires that Dr. Schulman's report be given to Caudill at all, it requires only that it be given upon request. *Id.* Caudill did not properly request Dr. Schulman's report.

In an August 23, 2019 letter to Caudill's attorney, The Hartford informed him that they intended to order a file review from an outside medical consultant. (Doc. 24-2 PageID 268.) Caudill, therefore, had notice of Dr. Schulman's report. Nevertheless, he did not request a copy of it specifically. Caudill contends that he did adequately request a copy of Dr. Schulman's report, citing a January 14, 2019 letter which he sent to The Hartford. (Doc. 24-5 PageID 1035.) However, this letter was not sufficient. At the time the letter was sent, Dr. Schulman's report had not yet been written. Given the language of the letter, wherein Caudill requests "a complete copy of the administrative record that has been compiled," the letter was not a continuing request for any future information, but, due to its use of the past tense, was a request only for the administrative record as it existed at the time the letter was sent. (*Id.*) Because Caudill did not request the record, The Hartford did not deny him a full and fair review under the older regulation in declining to provide it. The Court, therefore, need not decide whether § 2560.503-1(h)(2)(iii) would have required that Caudill be given a copy of Dr. Schulman's report had he requested it. Because the Court held that the newer version of the regulation does apply to Caudill's claim, Caudill was nevertheless entitled to receive a copy of Dr. Schulman's report.

9

### B. Arbitrary and Capricious Review

Caudill argues that, even if he was given a full and fair review, the decision of The Hartford to terminate his benefits was nonetheless arbitrary and capricious.

**1. Applicable Standard**

An arbitrary and capricious standard requires a court to "give great deference to plan administrators. . . [The Court] must uphold an administrator's benefits decision as long as 'it is the result of a deliberate, principled reasoning process and . . . supported by substantial evidence.'" *Autran*, 27 F.4th at 411 (citing *Davis v. Hartford Life and Accident Ins. Co.*, 980 F.3d 541 (6th Cir. 2020)). The decision of the plan administrator must be both procedurally and substantively reasonable. *Id.* at 412.

In order to be substantively reasonable, the conclusion of the plan administrator must be supported by substantial evidence in the administrative record. *Id.* If the evidence could reasonably support either a denial or an award of benefits, then the plan administrator's decision either way is substantively reasonable. *Id.*

Procedural reasonableness requires that plan administrators "engage in reasoned decision making." *Id.* This requires that the Court consider a number of factors. The Court can consider whether the plan administrator arbitrarily disregarded a claimant's reliable evidence. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Glenn v. Metlife,* 461 F.3d 660, 671 (6th Cir. 2006), *aff'd* 554 U.S. 105 (2008). If a plan administrator has previously held that a claimant is disabled but later declares the claimant not disabled, the Court can consider whether the plan administrator adequately explained the reason for that change. *Morris v. Am. El. Power Long-term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010); *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 507 (6th Cir. 2009). The Court can consider whether the plan

10

administrator adequately explained why he disagreed with a finding of disability by the Social Security Administration. *Glenn*, 461 F.3d at 669. The Court can consider whether the plan administrator chose to rely on a file review rather than an independent medical examination ("IME"). *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). The Court can consider the conflict of interest created by the fact that the plan administrator both determines whether benefits should be granted and pays out those benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. at 112.

### 2. Analysis of the Factors

#### a. Disregard of Reliable Evidence

##### i. The Functional Capacity Exam

Caudill alleges that the plan administrator failed to properly consider the Functional Capacity Exam ("FCE") that Caudill submitted as a part of his appeal. In his FCE, the occupational therapist stated that Caudill was capable of frequent sitting and occasional walking, meaning that he could sit for 1/3 to 2/3 of the day and walk for less than 1/3 of the day. (Doc. 24-5 at PageID 998, 1000.) However, the occupational therapist also stated that, while Caudill can perform these tasks in isolation, "even sustained sitting results in the need for external support and substantial fatigue." (*Id.* at 999.) Consequently, since even sedentary occupations require sustained, unsupported sitting, the occupational therapist stated that Caudill's issues even with sitting "would not be viable in most sedentary environments." (*Id.*)

Dr. Steven Wunder claimed in his IME report that Caudill could sit or stand for eight hours a day. (Doc. 24-5 PageID 1070.) Dr. Schulman stated that Caudill can sit for eight hours per workday in his file review. (Doc. 24-4 PageID 566). However, he did not explain why he favored Dr. Wunder's view over the information contained in the FCE. (*Id.*) Dr. Schulman also

did not address Caudill's affidavit explaining purported deficiencies in Dr. Wunder's IME. (*Id.*) The denial of Caudill's appeal relied almost exclusively on Dr. Schulman's report and an employability analysis relying on Dr. Schulman's report. (Doc. 24-2 PageID 264). Caudill argues that he cannot work even a sedentary job because he cannot sit at a desk for the full day. The Hartford, in denying his claim, relied on Dr. Schulman's report which stated that Caudill could sit for a full workday. Neither the report nor the denial letter explained why Dr. Schulman and The Hartford rejected the conclusion of the FCE.

### ii. Notes from Treating Physicians

Caudill alleges that The Hartford improperly disregarded the notes of his treating physicians. For example, Dr. Bjorn Thorinson, Caudill's respiratory doctor, noted in 2019 that Caudill "does not have good exertional tolerance" and "does have difficulty completing ADLs [Activities of Daily Living]." (Doc. 24-4 PageID 583.) Also in 2019, Dr. Kimberly Hendricks, Caudill's primary care physician, stated that Caudill "has trouble with ADLs." (*Id.* at PageID 806.) Neither Dr. Schulman nor the plan administrator address these records.

### b. Previous Disability Determination

The Court also can consider whether The Hartford adequately explained why it reversed its earlier decision to grant benefits. In this case, The Hartford has explained that it relied on Dr. Wunder and Dr. Schulman's reports stating that Caudill was no longer disabled.

### c. Social Security Disability Determination

The Court can consider whether the plan administrator arbitrarily disregarded the Social Security Administration's determination that Caudill was disabled. The Hartford explained in its denial letter that the Social Security determination was made in 2012, and The Hartford thought

12

that the medical records showed that Caudill's condition had improved in the intervening seven years.  (Doc. 24-2 PageID 266.)

### d. Reliance on a File Review

The Hartford's letter denying Caudill's appeal relied almost exclusively on Dr. Schulman's File Review.  (*Id.* at PageID 264–65.)  However, both Dr. Schulman and the initial denial letter relied upon Dr. Wunder's IME.  (Doc. 24-2 PageID 278; Doc. 24-4 PageID 565.)  There is "nothing inherently objectionable about a file review." *Calvert*, 409 F.3d at 296.  However, a court may consider whether "the failure to conduct a physical examination. . . raise[s] questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295.  However, while the denial of the appeal relied solely on the file review, The Hartford did request an IME, which was performed by Dr. Wunder, and Dr. Schulman did consider it.

Caudill argues that Dr. Schulman's report engages in impermissible credibility determinations.  The Sixth Circuit disapproves of credibility determinations made by a file reviewer who has not examined the claimant himself. *Id.* at 297 n. 6.  Caudill points to two sections of Dr. Schulman's report where he alleges that Dr. Schulman made credibility determinations.  First, Dr. Schulman noted that fibromyalgia tender points are self-reported, and so the severity is difficult to gauge.  (Doc. 24-4 PageID 566.)  However, this is not a credibility determination.  He is not suggesting that Caudill is lying about his tender points.  Rather, he is noting that since the severity of the pain cannot be determined objectively, it can be difficult to gauge.  Second, Caudill objects to a statement Dr. Schulman made about the cause of Caudill's depression and anxiety.  However, given that Caudill's claim is based on his fibromyalgia and COPD, even if Dr. Schulman did make a credibility determination, his assessment of Caudill's depression and anxiety does not weigh heavily in the Court's analysis.

### e. The Hartford's Conflict of Interest

The fact that The Hartford both determines whether a claim should be paid and pays that claim always creates a conflict of interest. *Glenn*, 554 U.S. at 112. This conflict of interest is one factor that a court can consider. However, in this case, where there is no evidence of a conflict beyond the inherent conflict of insurers in ERISA cases, this factor by itself is not determinative. *Id.* at 117. While Plaintiff points to a few cases where The Hartford has had its decisions overturned because of a finding of a conflict of interest on the basis that The Hartford acted arbitrarily and capriciously, this is not sufficient evidence of a conflict which is more serious than usual given the volume of claims The Hartford adjudicates.

Defendant relies upon *Holden v. Unum Life Ins. Co. of Am.*, No. 20-6318, 2021 WL 2836624 at *17 n. 21 (6th Cir. July 8, 2021), to argue that the Court cannot consider the conflict at all given the weak showing Plaintiff has made. However, *Holden* relies on Sixth Circuit cases which predate *Glenn*, and does not represent the current state of the law. In other cases, the Sixth Circuit has held that courts ought to take into account the structural conflict of interest inherent in ERISA cases such as this one even if the plaintiff has made no further showing of a conflict. *See, e.g. Judge v. Metropolitan Life Ins. Co.,* 710 F.3d 651, 664 (6th Cir. 2013).

### f. Balancing the Factors

Caudill provided credible, objective evidence that he is unable to work in even a sedentary capacity. As far as the Court can tell, this information was disregarded by The Hartford without explanation. In fact, Dr. Schulman's and Dr. Wunder's reports hardly discuss Caudill's respiratory issues at all. While Dr. Schulman does acknowledge Caudill's respiratory issues, the report never explains why, despite the FCE and Caudill's arguments about the insufficiency of Dr. Wunder's examination, Dr. Schulman believes that Caudill can sit for a full workday. The

14

denial of Caudill's appeal likewise does not address Caudill's respiratory issues, but simply relies on Dr. Schulman's report. While The Hartford is not required to defer to any particular report, it cannot arbitrarily disregard a claimant's evidence. Coupled with the notes of his treating physicians, and taking into account The Hartford's inherent conflict of interest, the Court concludes that The Hartford's determination that Caudill could work in a sedentary capacity despite his respiratory issues is arbitrary and capricious.

### C. Remedy

The Sixth Circuit has, at various times, after finding a termination of benefits arbitrary and capricious, both ordered retroactive reinstatement and ordered remand without retroactive reinstatement. *See, e.g. Glenn,* 461 F.3d at 675 (ordering retroactive reinstatement of benefits); *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 396 (6th Cir. 2009) (ordering remand). Courts have the authority to either remand a claim to the plan administrator or to award benefits to the disability claimant, depending on the circumstances. *Elliot v. Metropolitan Life Ins. Co.,* 473 F.3d 613, 621 (6th Cir. 2006). In *Elliot*, the Sixth Circuit reasoned that, when the problem is with the decision-making process, rather than that the claimant was denied benefits to which he is clearly entitled, remand rather than an award of benefits is the proper remedy. *Id.* at 622. *Elliot*, however, involved a denial of an initial claim for benefits rather than a termination of previously awarded benefits. Since *Elliot*, different panels of the Sixth Circuit have reached different conclusions as to the appropriate remedy in cases involving the termination of benefits. *Compare Zuke v. American Airlines, Inc.*, 644 F. App'x 649, 655 (6th Cir. 2016) (holding that remand is the appropriate remedy since the Court cannot say that claimant was clearly entitled to benefits); *with Neaton v. Hartford Life and Acc. Ins. Co.*, 517 F. App'x 475, 488 (6th Cir. 2013) (holding that when a claimant has previously been awarded long-term disability benefits and

15

claimant has presented objective evidence of ongoing disability, the presumptive remedy for an arbitrary and capricious termination of benefits is a retroactive reinstatement of the benefits) (citing *Houston v. Unum Life Ins. Co. of Am.*, 246 F. App'x 293, 303 (6th Cir. 2007) (holding the same)). The Sixth Circuit has likewise ordered retroactive reinstatement of benefits in cases where a plaintiff was receiving benefits, but the termination of benefits did not comply with § 1133. *Wenner v. Sun Life Assur. Co. of* Canada, 482 F.3d 878, 4 (6th Cir. 2007). In this case, because The Hartford, having awarded Caudill benefits, never properly terminated them, the Court will order that Caudill's benefits be retroactively reinstated unless and until The Hartford properly terminates them.

A district court has discretion as to whether to award prejudgment interest in an ERISA case. *Ciaramitaro v. Unum Life Ins. Co. of America*, 521 F. App'x 430, 435 (6th Cir. 2013). Plaintiff need not show bad faith on the part of the defendant, but must establish that the benefits were wrongly withheld. *Id.* The Court applies general equitable principles in determining whether to award prejudgment interest. *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 376 (6th Cir. 2009). Any award of prejudgment interest must be compensatory rather than punitive. *Id.* For the reasons stated above, The Hartford did not properly terminate Caudill's benefits. Since Caudill should have continued to receive these benefits, they were wrongly withheld. An award of prejudgment interest is appropriate in this case.

## IV. Conclusion

While the arbitrary and capricious standard is quite deferential, "the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). After weighing all the factors, it is clear that The Hartford's decision was not the result of a deliberate and

principled reasoning process. Furthermore, the Court finds that The Hartford denied Caudill a full and fair review. Therefore, the Court **GRANTS** Caudill's Motion for Judgment as a Matter of Law on the Administrative Record and **DENIES** The Hartford's Motion for Judgement on the Administrative Record.

    **IT IS SO ORDERED**.

                                                S/Susan J. Dlott_____
                                                Judge Susan J. Dlott
                                                United States District Court